ANTHONY DiROBBIO *vs.* FIRESAFE BUILDERS PRODUCTS CORPORATION.

AUGUST 4, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

338

BAKER, J.   This is an original petition brought under the provisions of the workmen's compensation act, general laws 1938, chapter 300, by an employee against his employer seeking compensation for an alleged injury arising out of and in the course of his employment.   After a hearing in the superior court a decree was entered denying and dismissing the petition and the petitioner has duly prosecuted his appeal to this court from the entry of that decree.

It appears from the evidence that the petitioner began work with the respondent as a laborer in the latter part of 1941.   Thereafter he was promoted to the position of "labor pusher," a kind of subforeman who worked with the laborers and transmitted orders from the foreman to them.   On January 17, 1945 while moving bomb boxes in the respondent's yard he suffered an injury.   In his testimony he described the happening as follows: "I was moving some bomb boxes, myself and two other laborers, and they was all coated with ice and as I tried to dislodge one it gave way and I went back on the ground and sat down on the

ice." In another portion of his testimony he stated that his entire back hit the ground. After the fall he felt a slight pain in his back and was told by the foreman to report at the first-aid room. The evidence is conflicting as to whether he did so. It does appear, however, that later he received some heat treatments for his back in that room. He continued doing his usual work without taking any time off and received his regular pay. Testimony was introduced on his behalf that at the suggestion of his foreman he just gave orders and did less heavy laboring work himself, as he complained of pain in his lower back.

On April 12, 1945 the petitioner injured one of his shin-bones. This injury became infected and he was out of work for about nine weeks. Compensation was paid him for that period. He returned to work at his old job in June 1945 and received his regular pay. According to his testimony his lower back still pained and to give it added support he purchased a belt which he was wearing at the time of the trial. He continued to work for the respondent, which was engaged in completing war contracts, until August 17, 1945 when he was laid off as the war work then stopped and the plant was at least 90 per cent shut down. The petitioner testified that thereafter he tried to get light work at several named plants but was unable to do so, and that he had been without steady employment up to the time of trial. It did appear, however, that he played an instrument in an orchestra at a night club two or three evenings a week for which work he received $6 per night. The testimony is conflicting as to whether he started to do this while he was still employed by the re-spondent or whether he began it after he was laid off.

The rescript of the trial justice concluded with the following statement: "The burden is upon petitioner to satisfy us by a fair preponderance of the credible testimony that he sustained an injury in the course of his employment which warrants an award of compensation to him. He has not done so. Petition is, therefore, denied." In view of the

facts appearing in evidence we understand him to find from the language used, not that the petitioner had not suffered an injury by accident, but that he had not satisfactorily proved that up to that time he had suffered a *compensable* injury, that is to say, one which up to the time of trial had caused a loss in his earning capacity. This was the determinative finding upon which he based his decision. The final decree entered in the superior court following such rescript is, however, defective in that it does not contain material findings of fact as the act requires. G. L. 1938, chap. 300, art. III, §6.

Much the same situation confronted the court in *Rigo* v. *Walsh-Kaiser Co.*, 73 R. I. 319. We are of the opinion that this point is governed by the decision in that case. By giving the rescript of the trial justice the meaning we have indicated we are of the opinion that the decree should properly have contained a finding of fact that any injury the petitioner suffered from his accidental fall was, up to the time of trial, not compensable because it was not shown that it had caused a loss in his earning capacity. Findings of fact in a decree are important because if they are supported by any legal evidence they are, in the absence of fraud, conclusive under the act. Art. III, §6, *supra*. Nothing in the record shows that either party objected to the form of the decree and the cause has been fully argued by them in this court on all material issues. We shall, therefore, as in the *Rigo* case, consider the decree as if it had been properly amended by the inclusion of the finding of fact above referred to.

Evidence as to the condition of petitioner's back and his ability to work was conflicting. His physician testified in substance that petitioner complained of pain in his lower back extending down his left hip; that he had some loss of motion in bending; that he had a sciatic nerve involvement on his left side; and that he could do only light work. Eventually this physician sent the petitioner to Dr. Hammond, an orthopedic specialist, who examined him Febru-

ary 27, 1946. To him the petitioner complained of steady pain in the upper spine, sometimes radiating down the right leg. The point of pain appeared to be over the spinal processes of the second and third lumbar vertebrae and there was some muscle spasm and limitation of motion. Doctor Hammond found nothing the matter with the petitioner's sciatic nerve or sacroiliac joint and gave it as his opinion that the petitioner was not totally disabled.

The physician at respondent's plant testified that he examined the petitioner in the latter part of March or early in April 1945 on his complaint of pain in his lower back. This witness stated that he found nothing objective; that there was no muscle spasm; and that physiotherapy treatment may have been suggested. An orthopedic physician who had been appointed as an impartial medical examiner by the department of labor testified in substance that he examined the petitioner September 17, 1945, which was about a month after the respondent's plant had closed. X-ray photographs of the lumbar spine and pelvis were taken at that time and were negative as far as bone injury or disease were concerned. This doctor testified as follows: "My opinion of the case was that the orthopedic examination was negative and that the man's complaints were purely subjective in nature and were not confirmed by my examination."

The doctor went into considerable detail regarding his examination. It was his opinion that the petitioner may have had a strain in January 1945 but when examined in September there were no objective symptoms to confirm such injury. The doctor also believed that a considerable amount of neurotic element was connected with the petitioner's complaints; that he needed reassurance; that he could do any work which did not require heavy lifting; and that he was not totally disabled but partially so. In answer to a question from the court concerning the extent of petitioner's disablement the doctor stated: "Well, my examination didn't reveal anything which would

lead me to make a diagnosis of a back injury of a severe nature * * * And when I stated the man could have a subsequent injury I meant that a back which is injured is more apt to be injured at a later date by some minor exertion than if it hadn't been injured."

The evidence showed that, except for the time when petitioner's leg injury prevented him from being employed, he had worked steadily and received his regular pay from the time of his alleged injury in January 1945 to August 17, 1945 when the respondent's plant practically closed. During that period the petitioner therefore suffered no loss of earning capacity. While there was some evidence from which it could be argued that after August 17, 1945 petitioner was partially incapacitated, nevertheless when the cause was heard in the superior court in October 1946 that matter was not pressed and no evidence was presented by the petitioner to show the extent of his alleged loss of earning capacity. We are of the opinion, therefore, that considering the whole record there was legal evidence to support the finding that the petitioner had received an accidental injury but had not sustained the burden of showing that at the time of trial he had suffered a loss of earning capacity by reason of his injury.

In support of his contention that the decree should be reversed, the petitioner has argued several additional points. It would seem, as the petitioner urges, that the trial justice did to some extent misconceive the evidence in respect to the time when the petitioner played in an orchestra. However, after examining the evidence relating to this matter we are of the opinion that the decision of the trial justice was not influenced by such misconception and that the petitioner was not prejudiced thereby. We have also considered the ruling of the trial justice in permitting, over the petitioner's objection, the respondent's attorney to ask the nurse in charge of the first-aid room, who was testifying on behalf of the respondent, a question of a hypothetical nature regarding the manner in which she kept her records.

We are of the opinion that in the circumstances the ruling in question was not erroneous.

The petitioner also objected to testimony about to be given by a witness for the respondent who was an investigator for its insurance carrier. The petitioner asked that such testimony be struck out before it was given. The trial justice permitted the witness to testify and gave the petitioner an exception. The motion undoubtedly was premature and it was not renewed after the testimony was admitted. However, if we consider it as a mere objection to the admission of testimony already given by the witness we are of the opinion that in the circumstances the petitioner's contention is without merit. He argues in effect that there was unethical conduct on the part of respondent's attorney in sending the witness to interview the petitioner. The question here, however, is merely evidentiary. Conduct, if unethical, is controlled in another manner. While the witness did, after this proceeding was started, visit the petitioner's house and asked him a few rather unimportant questions, his testimony actually related chiefly to his observations of the petitioner's movements and conduct in his home and while he was playing in an orchestra. The instructions given the witness were to find out the petitioner's activities. In our judgment the petitioner's rights were not prejudiced and he takes nothing by the exception in question.

In regard to the matter of the petitioner's medical expenses, we are of the opinion that in the circumstances the failure of the trial justice to allow them does not constitute error. The amount of the charges of petitioner's physician does not appear in evidence. No bill therefor has been sent by the doctor to the respondent and, as a matter of fact, it appeared in evidence that he still treats the petitioner occasionally. In this situation the provisions of G. L. 1938, chap. 300, art. II, §5, as amended, have not been fully complied with.

344

In order to secure compliance with the workmen's compensation act respecting the inclusion of findings of fact in the decree, the cause is remanded to the superior court with directions to amend the decree entered on November 25, 1946 by adding thereto the finding of fact above specified. Such amendment shall be entered as of the date of the original decree.

The petitioner's appeal is denied and dismissed, the decree as thus amended is affirmed, and the cause is remanded to the superior court for further proceedings.

*M. Louis Abedon, Michaelson & Stanzler, Julius C. Michaelson, Milton Stanzler,* for petitioner.

*Carroll & Dwyer, Edward F. J. Dwyer,* for respondent.